In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-3674

ALI SALEH KAHLAH al-MARRI,

*Petitioner-Appellant,*

*v.*

DONALD RUMSFELD, Secretary of Defense, and M.A. MARR, Commander, Naval Consolidated Brig, Charleston, South Carolina,

*Respondents-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-1220 — **Michael M. Mihm**, *Judge.*

ARGUED FEBRUARY 18, 2004 — DECIDED MARCH 8, 2004

Before COFFEY, EASTERBROOK, and EVANS, *Circuit Judges.*[†]

EASTERBROOK, *Circuit Judge.* A citizen of Qatar, Ali Saleh Kahlah al-Marri entered the United States on September 10, 2001. He was detained in December 2001 as a material witness believed to have evidence about the terrorist attacks of September 11. While in custody, al-Marri made statements that led to his indictment for lying to the FBI; the grand jury also charged him with using bogus identification to obtain loans. Some of al-Marri's activities took place in Illinois before his arrest and others during his time in the Southern District of New York as a material witness; he chose Illi-

---

[†] This opinion is being released in typescript. A printed copy will follow.

nois as a venue for the criminal proceedings. Before trial could be held, however, President Bush declared al-Marri to be an enemy combatant affiliated with al Qaeda. Later that day (June 23, 2003), the United States dismissed the indictment and moved al-Marri from Illinois to the Naval Brig in Charleston, South Carolina, for detention and questioning. That Brig is where other persons designated as enemy combatants, including Jose Padilla and Yaser Esam Hamdi, are being held.

Still liking the Central District of Illinois, al-Marri filed there a petition for a writ of habeas corpus. 28 U.S.C. §2241. Section 2241(a) provides: "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." The district judge read "jurisdiction" to refer to the district in which the court sits, rather than its ability to obtain personal jurisdiction over the warden. Charleston is within the District of South Carolina, and the judge held that it is the only court in which al-Marri may contest his custody. 274 F. Supp. 2d 1003 (C.D. Ill. 2003). Although al-Marri named as respondents the President and Secretary of Defense—anticipating that the district judge might be unwilling to treat the Commander of a military prison in South Carolina as amenable to suit in Illinois—the court was unpersuaded, ruling that the location for a proceeding under §2241 is the district of the petitioner's custody and not the larger (potentially nationwide) territory in which a custodian may be served with a summons.

Naming the President as a respondent was not only unavailing but also improper, and we have removed his name from the caption. Suits contesting actions of the executive branch should be brought against the President's subordinates. See *Franklin v. Massachusetts*, 505 U.S. 788, 803 (plurality opinion), 826 (Scalia, J., concurring) (1992). What is more, the President could not be called al-Marri's custodian even if he were otherwise an appropriate litigant. True, the President authorized al-Marri's custody by designating him as an enemy combatant, but there is a difference between authorizing and exercising custody. A judge authorizes custody by imposing a sentence of imprisonment, but this does not make the judge an appropriate respondent in a collateral attack. The legislature that enacted the statute in question, the criminal investigator who found damning evidence, the prosecutor, the

grand jurors who returned the indictment, the petit jurors who rendered the verdict, the judge who imposed sentence, the state or federal attorney general, the governor (or President)—these and more play roles in authorizing custody. But for an inmate of a brig, jail, or prison the "custodian" is the person in charge of that institution. See *Hogan v. Hanks*, 97 F.3d 189 (7th Cir. 1996). In the federal system, this means the warden (or Commander) rather than the Director of the Bureau of Prisons, the Secretary of the Navy, the Chairman of the Joint Chiefs of Staff, the Attorney General, the Secretary of Defense, or the President.

Commander Marr of the Naval Brig is al-Marri's custodian. Secretary Rumsfeld is Marr's (remote) superior, and no more an appropriate respondent on that account than is the Attorney General when a convicted federal prisoner or an alien detained pending removal seeks a writ of habeas corpus. See *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003). al-Marri named the Secretary of Defense in the belief that this would facilitate litigation in the Central District of Illinois, but we do not see why it would do so even if the Secretary were his custodian. Venue in actions against federal officials is controlled by 28 U.S.C. §1391(e):

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

See also *Stafford v. Briggs*, 444 U.S. 527 (1980). Neither Secretary Rumsfeld nor Commander Marr "resides" in the Central District of Illinois; al-Marri does not reside there either; few if any of the events that determine whether (and how) al-Marri can be held under the law of war and the authority granted by 18 U.S.C. §4001(a) and *Ex parte Quirin*, 317 U.S. 1 (1942), occurred in the Central District of Illinois. But if §2241(a) "otherwise provides," and allows litigation in the forum of the prisoner's choice, then again it is unnecessary to name the Secretary of Defense as a party; Commander Marr, like any other federal official, may be a defendant (in her official capacity) in any district where Congress has authorized the

litigation to take place. Whether Secretary Rumsfeld (or Commander Marr) has enough "contacts" with Illinois that litigation could occur in a court of that state consistent with due process is beside the point. An official-capacity suit such as this is against the office, not the person, and every federal office has "contacts" with the whole United States of America. The district court wields the authority of the United States as a nation rather than of any state. See *Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir. 1987). The right question is where §2241 allows litigation to be conducted. For persons imprisoned by the national government, the answer must be either "the district where the petitioner is confined" or "any of the 94 federal districts"; if the answer is favorable to al-Marri and venue lies everywhere, it suffices to name Commander Marr as a respondent. The answer, however, is not favorable to al-Marri.

Long ago the Supreme Court held that the phrase "within their respective jurisdictions" in §2241's predecessor limits proceedings to the federal district in which the petitioner is detained. See, e.g., *Wales v. Whitney*, 114 U.S. 564, 574 (1885); *Carbo v. United States*, 364 U.S. 611, 617 (1961). This is an assumption underlying 28 U.S.C. §2255: until that statute directed federal prisoners' post-conviction petitions to the sentencing courts, collateral attacks had been litigated where the prisoners were located. See *United States v. Hayman*, 342 U.S 205, 212–19 (1952). If §2241(a) allowed prisoners held in other states to file in the original sentencing districts, §2255 would have been unnecessary. Likewise §2241(d), which provides that, when a prisoner sentenced within one part of a state that has multiple federal districts is being held outside that district but still within that state, the petition may be filed in the district where the sentence was imposed. If all 94 federal districts are available to every prisoner all the time, what function does §2241(d) serve? Courts ought not read federal statutes in ways that make whole sections nugatory.

Appellate courts regularly dismiss actions under §2241 filed outside the judicial district that contains the place of the prisoner's detention. See, e.g., *Vasquez v. Reno*, 233 F.3d 688, 691 (1st Cir. 2000); *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *In re Hanserd*, 123 F.3d 922, 925 & n.2 (6th Cir. 1997); *Jones v. Biddle*, 131

F.2d 853, 854 (8th Cir. 1942); *Blango v. Thornburgh*, 942 F.2d 1487, 1491–92 (10th Cir. 1991); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986). We have taken the same position, not only in *Robledo-Gonzales* and *Hogan* but also in their predecessors. See, e.g., *United States v. Mittelsteadt*, 790 F.2d 39 (7th Cir. 1986); *Hanahan v. Luther*, 760 F.2d 148, 151 (7th Cir. 1985). These decisions respect the language of §2241(a) and the holdings of the Supreme Court. They make practical sense as well. Enforcing §2241(a) as written avoids forum shopping. Although al-Marri chafes at the prospect of litigating in South Carolina, the district court there and its appellate court are no less likely to respect his legal rights than are the courts of this circuit; and if to al-Marri (or his lawyers) it is irksome to litigate in Charleston, imagine the difficulties that would ensue if al-Marri could choose the district courts located in Fairbanks, Minot, San Juan, or Agana. National venue would mean that one idiosyncratic district or appellate court anywhere in the nation could insist that the entire federal government dance to its tune. Requiring prisoners to litigate where they are confined (or, under §2255, had been sentenced) not only distributes business among the district courts and circuits but also allows important issues to percolate through multiple circuits before the Supreme Court must review a disputed question. Cf. *United States v. Mendoza*, 464 U.S. 154 (1984).

Within the last few months, however, two courts of appeals have departed from this approach and held that, by naming a cabinet officer as a respondent, a prisoner may litigate in any of the 94 districts. See *Padilla v. Rumsfeld*, 352 F.3d 695, 704–10 (2d Cir. 2003), cert. granted, No. 03-1027 (U.S. Feb. 20, 2004) (enemy combatant detained at Charleston Brig); *Ali v. Ashcroft*, 346 F.3d 873, 887–88 (9th Cir. 2003) (alien detained pending removal). Neither of these opinions cites *Wales* or *Carbo*; neither devotes more than a passing glance to the language of §2241(a); neither acknowledges the contrary decisions of other circuits. What both *Padilla* and *Ali* do say is that the cabinet officer is a proper respondent because he played a leading role in the events that led to the detentions. The second circuit wrote: "[a]lthough Commander Marr is the commander of the Brig, the legal reality of control is vested in Secretary Rumsfeld, since only he—and not Commander Marr—could inform the President that further restraint of Padilla as an enemy combatant is no longer necessary." 352 F.3d at 707. And the ninth

circuit stated: "Petitioners are not merely in the custody of the INS District Director but are subject to a removal order that is based on the Attorney General's interpretation of the statute. Thus, the Attorney General, whose unique role as the ultimate decision-maker is particularly evident here, is the proper respondent." 346 F.3d at 888. Both of these decisions conflate the person responsible for authorizing custody with the person responsible for maintaining custody. Only the latter is a proper respondent. If *Padilla* and *Ali* were correct then the prosecutor, the trial judge, or the governor would be named as respondents in post-conviction proceedings under §2241 and §2254; yet no one believes that to be a sound understanding of these statutes. Certainly it is not the view long maintained by the federal judiciary, and neither *Padilla* nor *Ali* unearthed any clues suggesting that the historical understanding and practice are wrong. These opinions therefore do not persuade us to overrule *Robledo-Gonzales* and its predecessors.

*Padilla*, *Ali*, and al-Marri rely principally on *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973). Braden was imprisoned in Alabama under a sentence imposed by a court of that state. He also had been indicted in Kentucky, which planned to defer his trial until Alabama released him. After waiting for three years, Braden filed a petition under §2241(a) in the Western District of Kentucky, naming as respondent the court in which the indictment was pending and claiming a right to termination of the Kentucky proceedings on the ground that the state had not afforded him a speedy trial. The Court held, first, that Braden was "in custody" on the Kentucky indictment and, second, that the state court was a permissible respondent because it was the institution in charge of the Kentucky proceedings. *Braden* reflects the understanding that a prisoner can be "in custody" simultaneously in multiple jurisdictions—for example, when serving a sentence in State A and scheduled to be handed over to State B to begin a consecutive term, or when a sentence imposed by State C has been used to enhance a term being served in State D. See, e.g., *Garlotte v. Fordice*, 515 U.S. 39 (1995); *Maleng v. Cook*, 490 U.S. 488 (1989); Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Prisoners under penal obligation to two jurisdictions may seek collateral relief from both, for a writ of habeas corpus issued against either custodian may well abbreviate the petitioner's stay in custody. One of the "custodians" in these situations is entitled to

future rather than immediate physical control of the petitioner, and the respondent then must be a person or institution other than the warden. In order to reach this conclusion in *Braden*, the Court had to overrule *Ahrens v. Clark*, 335 U.S. 188 (1948), which had held that only the immediate physical custodian is a proper respondent.

What *Padilla* and *Ali* hold, and what al-Marri maintains, is that once *Braden* severed the link between physical detention and "custody," anyone with legal authority to influence the physical custodian's actions may be the respondent, and thus the litigation may be conducted against a Cabinet officer in any district. That's a non sequitur. *Braden* did not hold that litigation about the Kentucky indictment could occur everywhere. It held instead that multiple ongoing custodies imply multiple custodians. Braden sued his Kentucky custodian in Kentucky, just as §2241(a) provides. Similarly, when custody takes a form other than physical detention—for example, parole or an obligation to report for military service—it is necessary to identify as a "custodian" someone who asserts the legal right to control that is being contested in the litigation. See, e.g., *Strait v. Laird*, 406 U.S. 341 (1972); *Schlanger v. Seamans*, 401 U.S. 487 (1971). This does not imply that, when there is only one "custody" taking the form of physical detention, anyone other than the warden or equivalent official is a proper respondent. *Braden* itself recognized this, quoting with approval from *Wales*, which *Braden* called "the classic statement" of the custody principle. 410 U.S. at 495. The many cases cited a few paragraphs back—*Vasquez*, *Yi*, and the others, including those in our circuit—all post-date *Braden* and discuss the limits of that decision. They hold that, when there is only one custody and one physical custodian, that person is the proper respondent, and the district in which the prison is located the proper district, for proceedings under §2241(a). We adhere to those decisions today.

One final matter requires brief attention. After the United States filed a motion to dismiss al-Marri's indictment in the Central District of Illinois, his lawyer orally opposed "any movement of Mr. Al-Marri until we have an opportunity to file—it will be a habeas corpus action I suspect. … [W]e would ask that the Court stay his removal from the Peoria County jail for at least until some time tomorrow so we would have an opportunity to file an appropriate

petition with the Court in regard to the transfer to military custody." The district judge denied this motion on the ground that he has no authority to control the place at which the executive branch holds a prisoner. No appeal was taken. According to al-Marri, asking the district court for an injunction against transfer was equivalent to filing a petition under §2241; and if such a petition had been filed while al-Marri was still in the Central District of Illinois, that would have blocked transfer unless the judge authorized the movement, see Fed. R. App. P. 23(a), and even if transfer had been allowed the court would have retained jurisdiction. See *Ex parte Endo*, 323 U.S. 283 (1944). But what actually happened, rather than what could have happened, governs. Someone who files a notice of appeal one day after the time expired loses, even if the notice could have been filed on time. See *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982); *Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257 (1978). Likewise with a complaint filed one day after the statute of limitations, or a summons attempted to be served in hand one day after the potential defendant left the jurisdiction. Cf. *Burnham v. Superior Court of California*, 495 U.S. 604 (1990). What *did* happen is that, after arriving at the Charleston Brig, al-Marri filed a petition in Peoria, Illinois. He does not want the proceedings transferred to Charleston under §2241(b). It is, he says, Peoria or bust. The district court made the right choice between these alternatives.

Affirmed