In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-2893

ARKADIY L. KHOLYAVSKIY,

*Petitioner-Appellant*,

*v.*

DEBORAH ACHIM,
ALBERTO R. GONZALES,
and MICHAEL CHERTOFF,

*Respondents-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2257—**Elaine E. Bucklo**, *Judge*.

———————

ARGUED JANUARY 4, 2006—DECIDED APRIL 17, 2006

———————

Before CUDAHY, RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Arkadiy Kholyavskiy, a Jewish refugee from Russia, has been incarcerated at the Kenosha County Detention Center in Kenosha, Wisconsin, since he was ordered removed for committing two or more crimes of moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I). Contending that this detention is unconstitutional and seeking his immediate release from custody, he brought this action for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. *See* 28 U.S.C. § 2241. Mr. Kholyavskiy's habeas petition named as respon-

dents the director of the Chicago field office for the United
States Immigration and Customs Enforcement ("ICE"), the
Secretary of the Department of Homeland Security and the
Attorney General. In a motion to dismiss for lack of jurisdic-
tion, these respondents claimed that they did not have
"custody" over Mr. Kholyavskiy within the meaning of the
habeas statute. The district court granted the motion,
holding that the proper respondent to Mr. Kholyavskiy's
habeas petition is the warden of the Kenosha Detention
Center, the facility in which he is detained. For the reasons
set forth in the following opinion, we affirm the judgment
of the district court.

# I

## BACKGROUND

Mr. Kholyavskiy entered the United States as a refugee
from Russia in 1992, a time when Jews in the recently
dissolved Soviet Union continued to encounter widespread
anti-Semitism. *See Sosnovskaia v. Gonzales*, 421 F.3d 589, 590-
91 (7th Cir. 2005). In 1995, at the age of 18, he became a
lawful permanent resident of the United States. Beginning
in 1996, however, Mr. Kholyavskiy's behavior turned erratic
and criminal, resulting in convictions for vandalism,
harassment, trespassing, battery and larceny. He was
taken into custody by the INS in 2001 and eventually
ordered removed by the Board of Immigration Appeals
("BIA") because he had committed two or more crimes of
moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I). Mr.
Kholyavskiy initially was released on bond while the
BIA considered his motion to reopen the proceedings on the
ground that his counsel rendered ineffective assistance. Just
a few days later, however, Mr. Kholyavskiy was arrested in

Highland Park, Illinois, for disorderly conduct and placed in custody by officials of the Chicago office of ICE (the successor agency to the INS).[1] After initial processing at an ICE facility in Broadview, Illinois, Mr. Kholyavskiy was transferred to the Kenosha County Detention Center in Kenosha, Wisconsin ("Kenosha"), one of several state jails used by ICE to house aliens awaiting deportation.

Mr. Kholyavskiy's motion to reopen eventually was granted by the BIA, but he remained detained in Kenosha while his case for asylum was reopened and then ultimately denied by an immigration judge and the BIA. In April 2005, he brought this action in the Northern District of Illinois for a writ of habeas corpus, naming as respondents Deborah Achim, director of the Chicago ICE field office, Secretary of the Department of Homeland Security Michael Chertoff and Attorney General Alberto Gonzales. The district court dismissed his petition for want of jurisdiction because Mr. Kholyavskiy had failed to name as respondent the person exercising custody over him at the Kenosha jail. The district court ruled that Mr. Kholyavskiy was required to name as a respondent his "immediate custodian," the person exercising "day-to-day control over the prisoner." R.18 at 2 (internal quotation marks omitted). That person, continued the district court, was the Kenosha warden, not Ms. Achim, Mr. Chertoff or Mr. Gonzales.

---

[1] The office of Immigration and Customs Enforcement, a unit of the Department of Homeland Security, has assumed responsibility for enforcement of the immigration laws after implementation of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. *See generally Ashton v. Gonzales,* 431 F.3d 95, 96 n.2 (2d Cir. 2005). The old INS district directors are now titled "Field Office Directors," but their functions remain the same. *See* 8 C.F.R. § 1.1(o) (2005).

Soon after the district court's dismissal of his petition, Mr. Kholyavskiy filed another habeas petition in the United States District Court for the Eastern District of Wisconsin. This petition named as respondent the warden of the Kenosha facility. He nevertheless asks that we review the ruling of the district court in his initial action.

## II

## DISCUSSION

### A.

We must decide the correct application of the immediate custodian rule to petitions for habeas corpus brought by aliens awaiting deportation. As we noted earlier, the district court took the view that Mr. Kholyavskiy was required to name the warden of the Kenosha facility, the person who had direct control over his day-to-day activities. Because this ruling presents a question of law, our review is de novo. *See Samirah v. O'Connell*, 335 F.3d 545, 548 (7th Cir. 2003).

Congress has provided that an application for a writ of habeas corpus shall allege, among other matters, "the name of the person who has actual custody over [the petitioner]." 28 U.S.C. § 2242 ¶ 2. Similarly, the writ, once granted by a district court, "shall be directed to the person having custody of the person detained." *Id.* § 2243; *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) ("[A] petition for a writ of habeas corpus must be directed to the individual or individuals who holds the petitioner in allegedly unlawful custody."). Naming the proper custodian fits with the logic of collateral relief because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged

to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494-95 (1973).[2]

**1.**

A century-old line of Supreme Court precedent has defined a habeas petitioner's custodian as the person "'who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge.'" *Id.* (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added)). We have given further elaboration to this definition by describing the immediate custodian as the individual having "day-to-day control" over the

---

[2] Congress also has instructed that a district court may issue a writ only "within [its] respective jurisdiction." 28 U.S.C. § 2241(a). This means, in most cases, that the named custodian must reside within the geographical confines of the federal district where the complaint was filed. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). There are two statutory exceptions to this rule that are not relevant here: (1) that a prisoner serving a state criminal sentence in a state that contains more than one federal district may file in either district, *see* 28 U.S.C. § 2241(d); and (2) that a federal prisoner collaterally attacking his criminal sentence may do so only in the district where the sentence was imposed. There is also a judicially-crafted exception that emerged with the *Braden* decision, in which the Supreme Court allowed a prisoner housed in Alabama to challenge his future confinement in Kentucky by filing a habeas petition in Kentucky federal court. *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494-95 (1973). After *Braden*, "[p]risoners under penal obligation to two jurisdictions may seek collateral relief from both." *al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (7th Cir. 2004) (discussing *Braden*).

facility in which a prisoner is housed. *Robledo-Gonzales*, 342 F.3d at 673. Typically, for an inmate of a jail or prison, his immediate custodian is the warden. *See id.*; *see also al-Marri v. Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004) ("In the federal system, this means the warden (or Commander) rather than the Director of the Bureau of Prisons . . . .").

The immediate custodian rule is "a practical one based on common sense administration of justice." *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945). Although the Attorney General is, in the end, responsible for the operation of federal penitentiaries and for the location of a prisoner's confinement, he is a single supervisory official with an office in Washington, D.C. An interpretation of "custody" that were to include the Attorney General within its sweep would make the District Court for the District of Columbia the default forum for the habeas petitions of every federal prisoner in the United States. To ensure a more even distribution among the federal districts, Congress has required that a habeas petition name the person in direct charge of the local penal institution. *See al-Marri*, 360 F.3d at 710.

**2.**

Mr. Kholyavskiy submits that the immediate custodian rule should be different when the habeas petitioner is not serving a criminal sentence but is instead an alien undergoing removal proceedings. Rather than identifying the Kenosha warden in his petition, Mr. Kholyavskiy named Deborah Achim, director of the ICE field office in Chicago because he claims that she has "the authority to transport, transfer and ultimately release him from custody." Appellant's Br. at 14. There is little doubt that the Northern

District of Illinois would have had jurisdiction over Ms. Achim if she were indeed the proper respondent. The only question, then, is whether she properly was identified as Mr. Kholyavskiy's custodian.

The circuits have divided on the question of whether a detained alien challenging his impending removal must name the warden of his detention facility in a petition for habeas corpus, or whether the alien may name an immigration official instead. Some courts have allowed an alien to name the INS district director who oversees the confinement of aliens within that INS district. *See, e.g., Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003); *Henderson v. INS*, 157 F.3d 106, 126 (2d Cir. 1998). These courts reason that the wardens of state and local facilities used by the INS "act pursuant to INS Detention Standards and are considered agents of the INS District Director in their district." *Roman*, 340 F.3d at 320. As these courts see it, whatever day-to-day control the wardens have over an alien detainee, they exercise that control only at the direction of the INS. *See id.*

The Third and First Circuits have taken a different view. In *Yang You Yi v. Maugans*, the Third Circuit held that, despite the power of the INS district directors, "[i]t is the warden of the prison or the facility where the detainee is held that is considered the custodian for purposes of a habeas action." 24 F.3d 500, 507 (3d Cir. 1994). The court explained:

> This is because it is the warden that has day-to-day control over the prisoner and who can produce the actual body. That the district director has the power to release the detainees does not alter our conclusion. Otherwise, the Attorney General of the United States could be considered the custodian of every alien and

prisoner in custody because ultimately she controls the district directors and the prisons.

*Id.* (citations removed). Similarly, in *Vasquez v. Reno*, the First Circuit dismissed an alien's habeas petition that named the Attorney General as respondent. 233 F.3d 688, 689 (1st Cir. 2000) ("[A]s a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").[3] The First Circuit reasoned in *Vasquez*:

> In terms of identifying a proper custodian, there is no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility awaiting trial or serving a sentence. Since the case law establishes that the warden of the penitentiary not the Attorney General is the person who holds a prisoner in custody for habeas purposes, it would be not only illogical but also quixotic to hold that the appropriate respondent in an alien habeas case is someone other than the official having day-to-day control over the facility where the alien is being detained.

*Id.* at 693.

We have not addressed this question directly. In *Robledo-Gonzales*, an alien who had been deported reentered the

---

[3] In *Vasquez*, the alien also had named an INS district director as respondent. *See Vasquez v. Reno*, 233 F.3d 688, 690 (1st Cir. 2000). However, according to the court, the named director was not the individual that had actual control over Vasquez's detention. And, because the INS director who should have been named was outside of the court's in personam jurisdiction, Vasquez's habeas petition was dismissed.

country illegally and was apprehended and charged with the federal crime of illegal reentry. *See* 342 F.3d at 670. While incarcerated awaiting trial, Robledo-Gonzales filed a habeas petition in the Northern District of Illinois that named the Attorney General, the Commissioner of the INS and the local INS district director as respondents. We held that none of these respondents exercised "day-to-day" control over Robledo-Gonzales, and accordingly his habeas petition had to be dismissed for lack of jurisdiction. We were careful, however, to distinguish Robledo-Gonzales's case from situations in which an alien "brings a habeas petition to challenge the execution of a final order of removal." *Robledo-Gonzales*, 342 F.3d at 674. Robledo-Gonzales was not being detained under a final order of deportation, nor under any other order by immigration authorities.[4] He was a prisoner awaiting trial for violating federal law. Therefore, any case law from the immigration context was considered inapposite, and his petition was dismissed for failing to name the warden as respondent.

Similarly, in *al-Marri v. Rumsfeld*, we discussed the immediate custodian rule at length, but did not resolve conclusively the rule's application in the immigration context. *See* 360 F.3d at 707. Ali Saleh Kahlah al-Marri was a Qatari national held as an enemy combatant at a naval brig in Charleston, South Carolina. He filed a habeas petition in

---

[4] *See Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 674 (7th Cir. 2003) ("Mr. Robledo-Gonzales was not the subject of immigration proceedings at the time his petition was filed, nor is he at the present time. Indeed, neither the INS nor its successor agency, the Department of Homeland Security, has taken even the preliminary step of filing a notice of detainer with the criminal authorities.").

the Central District of Illinois, naming the President, the Secretary of Defense and M.A. Marr, the commander of the Charleston naval brig, as respondents. We noted that Commander Marr was al-Marri's custodian. Nevertheless, the dismissal of al-Marri's petition was affirmed because Commander Marr and the naval brig were outside of the territorial confines of the Central District of Illinois. We interpreted 28 U.S.C. § 2241, which gives district courts the power to grant writs of habeas corpus "within their juris-dictions," to mean that the only proper venue for habeas proceedings is the federal district in which the petitioner is detained. *See* 360 F.3d at 709-10. In our view, the require-ment that a prisoner litigate where he is confined not only enforces § 2241 as written, but also is valuable from a policy standpoint because it "distributes business among the district courts and . . . allows important issues to percolate through multiple circuits before the Supreme Court must review a disputed question." *Id.* at 710. Our *al-Marri* opinion was critical of cases that allowed habeas petitioners to name an INS district director or the Attorney General as respon-dents. These decisions, we wrote, "conflate the person responsible for authorizing custody with the person respon-sible for maintaining custody." *Id.* at 711.

More recently, the Supreme Court decided *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), which presented a virtually identical set of circumstances as *al-Marri*. Like al-Marri, Jose Padilla was detained as an enemy combatant at the Charleston, South Carolina, naval brig. In his petition for habeas corpus, he named Secretary of Defense Donald Rumsfeld, in addition to Commander Marr.[5] The South

---

[5] The only difference from the *al-Marri* case—an immaterial

(continued...)

ern District had concluded that, because Padilla's case was unusual, at least as compared to most federal habeas petitions, it was appropriate to adopt a more flexible approach to determining the proper respondent. The court held that Secretary Rumsfeld's personal involvement in Padilla's military custody rendered him a proper respondent to Padilla's habeas petition; the district court also considered the Secretary to be within the jurisdictional reach of New York's long-arm statute, despite his absence from the Southern District. The Second Circuit, although divided on the merits, affirmed the district court's jurisdictional analysis in full.

The Supreme Court reversed these jurisdictional holdings. Concluding that Padilla's petition was a "core challenge"—that is, a challenge to "present physical confinement"—the Court held that the immediate custodian rule should apply. *Padilla*, 542 U.S. at 435 ("[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").[6] Similarly, the Court held that core habeas

---

[5] (...continued)

one—was that Padilla filed his petition in the Southern District of New York instead of the Central District of Illinois.

[6] Although the Court in *Padilla* did not precisely draw the line between "core" and "non-core" habeas petitions, the decision offers some guidance with respect to these terms. The *Padilla* Court distinguished from the classic "core" habeas challenge situations in which a petitioner "challenges a form of 'custody' other than present physical confinement." *Rumsfeld v. Padilla*, 542

(continued...)

challenges may be brought only in the district court that has territorial jurisdiction over the detainee's immediate custodian. *Id.* at 444.[7]

In light of *Padilla*, we must determine as a threshold matter whether Mr. Kholyavskiy's habeas challenge falls within the "core" or "non-core" category of habeas challenges. Notably, unlike the cases that have precipitated disagreement among some of our sister circuits, Mr.

---

[6] (...continued)
U.S. 426, 438 (2004). These latter situations, according to the Court, fall under the exception in *Braden*. As the Court emphasized, Braden had not contested the validity of the Alabama conviction for which he was presently confined, but instead sought to challenge a detainer imposed by a court in Kentucky—"confinement that would be imposed in the future." *Braden*, 410 U.S. at 489. The Court held that Braden could be considered in custody in Kentucky by virtue of the detainer, and therefore the proper respondent was not the prisoner's immediate physical custodian (the Alabama warden), but was instead the Kentucky court in which the detainer was lodged. As the Court observed in *Padilla*, *Braden* represents the "non-core" situation and means that "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.' " *Padilla*, 542 U.S. at 438.

[7] Despite this broad holding, the Supreme Court expressly reserved the question of whether the immediate custodian rule applies in the context of immigration habeas petitions. *Padilla*, 542 U.S. at 436 n.8 (recognizing the circuit split but refusing to resolve it). Nevertheless, the *Padilla* decision supplies at least the mode of analysis for habeas petitions implicating the immediate custodian rule, including those brought by alien detainees.

Kholyavskiy's petition for habeas corpus does not challenge the validity of his removal order, but instead attacks the constitutionality of his confinement while he was awaiting removal. His petition asserts that his "excessive detention" at Kenosha deprives him of his rights to substantive and procedural due process. R.1 at 1, 18, 26; *see also id.* at 9 ("The action complained of is the unconstitutional length of Petitioner's detention pending the final adjudication of the appeal of his removal proceedings and the bond appeal."). Because this alleged "excessive detention" is taking place where Mr. Kholyavskiy is currently incarcerated, his habeas challenge is fundamentally no different from the typical "core" challenge described in *Padilla*, in which a prisoner seeks release from present physical confinement. *Padilla* holds that a habeas petition seeking this type of relief must name the "person who has the *immediate custody* of the person detained, with the power to produce the body of such party before the court or judge." *Padilla*, 542 U.S. at 435 (emphasis in original) (internal quotation marks omitted). Mr. Kholyavskiy's habeas petition has not named this individual.

### 3.

Mr. Kholyavskiy nevertheless contends that Ms. Achim, director of the Chicago field office for ICE, is actually his immediate custodian, even though the warden exercises day-to-day control over the Kenosha facility. In support of this contention, Mr. Kholyavskiy invites our attention to a number of administrative regulations and governmental operations documents. This material indicates that ICE field office directors oversee the confinement of aliens in state and local jails such as Kenosha. These facilities are used by ICE, and its parent agency, the Department

of Homeland Security, under Intergovernmental Service Agreements to hold detainees for more than 72 hours. *See generally Roman*, 340 F.3d at 320. The wardens of the facilities are considered agents of ICE field office directors who oversee alien detentions in that region. The warden-ICE relationship is further defined by the ICE Detention Operations Manual, which specifies the standards with which contracted local jails, such as the Kenosha facility, must comply. In particular, the manual provides that a local warden may not remove an alien detainee without the express permission of an ICE official. All of this material defining the contractual arrangement between the ICE and local wardens, according to Mr. Kholyavskiy, means that only the ICE official, not the warden, has the power to produce the body of the detainee before a habeas court. Therefore, Mr. Kholyavskiy's argument goes, Ms. Achim is the functional equivalent of a warden for purposes of his habeas challenge.

We cannot accept this argument. By claiming that Ms. Achim is, in effect, his immediate custodian, Mr. Kholyavskiy's argument makes the logical misstep discussed in *al-Marri* of "conflat[ing] the person responsible for authorizing custody with the person responsible for maintaining custody." *al-Marri*, 360 F.3d at 711. Ms. Achim has the authority to free Mr. Kholyavskiy, but so do her superiors, all the way up to the President of the United States. We do not understand Mr. Kholyavskiy to be suggesting that the President is his immediate custodian. Noticing an almost identical mistake, we recently refused to allow a state to substitute the director of the state department of corrections for the warden who was named respondent in a habeas petition. *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005). There, we observed:

The fact that a superior officer can arrange for the petitioner's release need not imply that the superior has "custody" of the person. We can order a petitioner released if we find that he is being held in violation of federal law, but that does not make us his custodian.

*Id.* Similarly, Ms. Achim's authority to arrange for Mr. Kholyavskiy's release does not make her his immediate custodian for habeas purposes. *See Padilla*, 542 U.S. at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").

### Conclusion

Because Mr. Kholyavskiy did not name his immediate custodian in challenging his present physical confinement in Kenosha, we must affirm the dismissal of his petition for habeas corpus.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-17-06