DUY THO HY, Petitioner,

v.

Brian GILLEN and Bruce Chadbourne, Respondents.

Civil Action No. 08–11699–JLT.

United States District Court, D. Massachusetts.

Dec. 3, 2008.

Kerry E. Doyle, Graves & Doyle, Jeremiah Friedman, Jeanette Kain, Kaplan, O'Sullivan & Friedman, LLP, Boston, MA, for Petitioner.

Mark J. Grady, United States Attorney's Office, Boston, MA, for Respondents.

Kristopher N. Austin, Foley Hoag LLP, Boston, MA, for Amicus PAIR Project, Inc.

## MEMORANDUM

TAURO, District Judge.

In this habeas corpus case, Petitioner Duy Tho Hy challenges his confinement without a bond hearing while removal proceedings against him are pending. Petitioner contends that United States Immigration and Customs Enforcement ("ICE") holds him in mandatory detention pursuant to an erroneous interpretation of 8 U.S.C. § 1226(c). Respondents have moved to dismiss for failure to name proper parties, failure to exhaust administrative remedies, and failure to state a claim. For the following reasons, Respondents' *Motion to Dismiss* is ALLOWED IN PART and DENIED IN PART, and the *Petition for Writ of Habeas Corpus* is ALLOWED.

## I. *Background*

Congress enacted the mandatory detention provision as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.[1] Although passed in 1996, the mandatory detention provision did not take full effect until October 9, 1998.[2] Congress expressly provided that the mandatory detention provision would apply prospectively only.[3] The text of § 1226(c) provides that:

> The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> *when the alien is released,* without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested again for the same offense.[4]

On September 25, 2008, an Immigration Judge ruled that Petitioner was subject to mandatory detention pursuant to § 1226(c).[5] A citizen of Vietnam, Petitioner emigrated to the United States in 1981.[6] He arrived as a refugee with his family

---

1. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 § 236(c) ("IIRIRA").

2. *See Thomas v. Hogan,* No. 1:08–CV–0417, 2008 WL 4793739, at *1 (M.D.Pa. Oct. 31, 2008) (explaining the history of the provision).

3. *See* IIRIRA § 303(b)(2). This language is no longer codified.

4. 8 U.S.C.A. § 1226(c) (West 2008) (emphasis added).

5. Pet. ¶ 16

6. *Id.* ¶ 8.

and is currently married to a U.S. citizen.[7] On February 5, 1991, Petitioner pleaded guilty to two counts of indecent assault and battery of a minor.[8] In February 1994, Petitioner completed his sentence and his probation was terminated.[9]

On December 3, 2007, Petitioner was arrested in New Hampshire for simple assault and criminal threatening.[10] The criminal charges were subsequently dismissed, but Petitioner was placed in ICE custody during the arrest.[11] An Immigration Judge then denied Petitioner a bond hearing, finding that Petitioner was subject to mandatory detention pursuant to § 1226(c).[12] Although § 1226(c) did not take effect until several years after Petitioner completed his sentence, the Government maintains that Petitioner is still subject to mandatory detention because his release from custody following the 2007 arrest occurred after the statute took effect.[13] Petitioner never filed an appeal of the Immigration Judge's decision with the Board of Immigration Appeals ("BIA").[14]

Petitioner now challenges his detention without a bond hearing and seeks a writ of habeas corpus. Since he was taken into federal custody, Petitioner has been held at the Plymouth County Correctional Facility in Massachusetts,[15] where the federal government has contracted for space to detain aliens.[16] As respondents in this action, Petitioner has named Bruce Chadbourne in his capacity as Field Office Director for the Boston Field Office of ICE and Brian Gillen in his capacity as Superintendent of Plymouth County Correctional Facility.

## II. Discussion

### A. Improper Parties

■ Respondents' first contention in their Motion to Dismiss is that Bruce Chadbourne is not a proper party to this action. In *Rumsfeld v. Padilla*, the Supreme Court held that the proper respondent to a habeas petition is "the person who has custody over the petitioner," typically the warden of the facility where the petitioner is detained, and not a remote supervisory official.[17] The Court further noted that "there is generally only one proper respondent to a given prisoner's habeas petition."[18] The First Circuit has since held more precisely that "there is only one proper respondent to a habeas petition" and that is the "individual having day-to-day control over the facility in which [the petitioner] is being detained."[19] Petitioner argues that both Gillen and Chadbourne have custody over him because Gillen is the warden of the state facility where Petitioner is detained and Chadbourne is the federal officer who ultimately determines whether Petitioner re-

---

7. *Id.* ¶¶ 10–11.

8. *Id.* ¶ 14.

9. *Id.*

10. *Id.* ¶ 15.

11. *Id.*

12. *Id.* ¶ 16.

13. *Id.*

14. Resp't Mem. Supp. Mot. Dismiss 2.

15. Pet. ¶ 5.

16. *See* Pet'r Mem. Opp'n Mot. Dismiss 4.

17. *See* 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) (internal quotations omitted).

18. *Id.*

19. *See Vasquez v. Reno,* 233 F.3d 688, 693 (1st Cir.2000).

mains in detention.[20]

■ When an alien is detained in a state facility at the direction of the federal government, circuits have divided over whether the warden of the detention facility or the responsible federal immigration official is the proper respondent to a habeas petition.[21] Though not directly addressing the question, the First Circuit appears to have sided with those courts holding that only the warden of the detention facility is the proper respondent in such a case. In *Vasquez*, the court dismissed a petition for habeas corpus for failure to name a proper respondent, even though Petitioner had named the ICE Boston Field Office Director,[22] the same position held by Respondent Chadbourne today. Because the petitioner's *immediate* custodian is the only proper respondent, a supervisory officer of any kind, even when both state and federal authorities are involved, is not a proper party. As the federal official charged with decisions related to Petitioner's detention, Chadbourne does not exercise "day-to-day control" over Petitioner, but is a supervisory official. Accordingly, the Petition is DISMISSED as to Respondent Chadbourne.

**20.** *See* Pet'r Mem. Opp'n Mot. Dismiss 2–3.

**21.** *Compare Kholyavskiy v. Achim,* 443 F.3d 946, 950 (7th Cir.2006) (discussing the split and holding that the warden of the detention facility is the proper respondent), *and Yang You Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir.1994) (treating the warden of the detention facility as the custodian for purposes of a habeas action), *with Roman v. Ashcroft,* 340 F.3d 314, 320 (6th Cir.2003) (deeming the responsible federal immigration officer the proper respondent), and *Henderson v. INS,* 157 F.3d 106, 126 (2d Cir.1998) (same).

**22.** 233 F.3d at 690; *see also Kholyavskiy,* 443 F.3d at 950 (citing *Vasquez* ).

**23.** Resp't Mem. Supp. Mot. Dismiss 4.

### B. *Exhaustion of Remedies*

■ Respondents also seek to dismiss the Petition as to Respondent Gillen for failure to exhaust administrative remedies because Petitioner never appealed the Immigration Judge's decision to deny a bond hearing with the BIA.[23] Respondents concede that exhaustion of remedies is not statutorily required where an alien detainee challenges only a bond determination, but argues that the common law exhaustion doctrine should bar review of the Petition in this case.[24]

■ Where Congress does not mandate exhaustion by statute, the court's discretion governs whether a petitioner must exhaust his administrative remedies before applying for relief in federal court.[25] A court may excuse a failure to exhaust where administrative review would be futile or where the agency has predetermined the issue before it.[26] Here, the BIA issued a precedent decision before Petitioner was denied a hearing holding that individuals in Petitioner's position are subject to mandatory detention.[27] Because the BIA had already predetermined the issue presented by Petitioner's claim, an administrative appeal would have been futile.[28] Accordingly, this court declines to

**24.** *See id.*

**25.** *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

**26.** *See id.* at 148, 112 S.Ct. 1081.

**27.** *See Matter of Saysana,* 24 I. & N. Dec. 602 (BIA 2008).

**28.** Cases cited by Respondents suggesting more is required under the futility doctrine are inapposite. *Sousa v. INS* does hold that exhaustion is not excused merely because the agency has previously rejected an argument, but that holding only pertained to statutory exhaustion, which the court recognized is "more rigid than the common law doctrine."

dismiss the Petition for failure to exhaust administrative remedies.[29]

### C. Failure to State a Claim

■ Finally, Respondents contend that the Petition must be dismissed for failure to state a claim because Petitioner is properly held in mandatory detention pursuant to 8 U.S.C. § 1226(c).[30] Mandatory detention is required when an alien is taken into state custody for an offense enumerated in the statute and is subsequently released. A conviction for indecent assault and battery would qualify an alien for mandatory detention, but Petitioner's conviction for that offense and subsequent release from custody each occurred before the statute took effect in 1998. The Government concedes that the statute at issue does not have retroactive effect. The question here, then, is whether Petitioner's release from state custody for unrelated charges after the statute took effect combines with the earlier conviction to qualify Petitioner

for mandatory detention. Respondents maintain that the BIA interpretation followed by the Immigration Judge is entitled to *Chevron* deference and should not be second-guessed by the courts.[31]

*Chevron* established a two-step framework for reviewing an agency's statutory interpretation.[32] In the first step, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[33] Under this step, the court must "try to determine congressional intent, using traditional tools of statutory construction,"[34] and considering "the language and structure of the Act as a whole."[35] If traditional tools of statutory construction do not reveal clear congressional intent, the court proceeds to step two and determines whether the agency's interpretation is "reasonable," giving sub-

---

226 F.3d 28, 31–32 (1st Cir.2000). Respondents also cite *Portela–Gonzalez v. Sec'y of the Navy*, which states that individuals seeking to avoid exhaustion "must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." 109 F.3d 74, 78–79 (1st Cir.1997). But there the plaintiff had only a "pessimistic hunch based on failure at lower administrative levels" to support his futility argument, *id.*, and there was no evidence that the administrative agency had already issued a precedent decision opposing the plaintiff's position, as is the case here.

29. Other courts have similarly declined to require exhaustion where an alien detainee challenges mandatory detention pursuant to § 1226(c). *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir.2004); *Cox v. Monica*, No. 1:07–CV–0534, 2007 WL 1804335, at *3 (M.D. Pa. June 20, 2007); *Welch v. Reno*, 101 F.Supp.2d 347, 350–52 (D.Md.2000); *Aguilar v. Lewis*, 50 F.Supp.2d 539, 541 (E.D.Va.1999); *Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D.Wash.1997).

30. Resp't Mem. Supp. Mot. Dismiss 6.

31. *See id.* 10–11.

32. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

33. *Id.* at 842–43, 104 S.Ct. 2778.

34. *Dole v. United Steelworkers of America*, 494 U.S. 26, 35, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990); *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) ("Even for an agency able to claim all the authority possible under *Chevron*, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.").

35. *Dole*, 494 U.S. at 41–42, 110 S.Ct. 929.

stantial deference to the agency.[36]

The text of § 1226 provides that detained aliens must be given a bond hearing before an Immigration Judge unless the alien qualifies for mandatory detention under the statute. Stripped to its essence, the mandatory detention provision provides that "[t]he Attorney General shall take into custody any alien who ... is inadmissible ... [or] deportable by reason of having committed [an enumerated offense] *when the alien is released.*"[37] The Government's position is that the phrase "when released" refers to *any* subsequent "release" from state custody, irrespective of whether the custody occurred as a result of an offense listed in § 1226(c).[38]

Viewing the "when released" language in light of the section as a whole, it is clear that the "release" triggering mandatory detention must be related to the underlying qualifying offense. The "when released" language immediately follows the enumerated offenses, and the clause is further modified by language providing that detention is required whether or not the alien may, among other things, be arrested again "for the same offense." The reference to the "same offense" in the phrase modifying the "when released" language suggests that the whole clause applies to a release from custody for the offense rendering the alien removable. Because the entire section speaks of certain qualifying offenses, it is only natural to read the "when the alien is released" clause to mean "when the alien is released from custody arising from the qualifying offense."

Even if the language is ambiguous, the Government's interpretation is unreasonable. Under the Government's reading, an alien who committed a qualifying offense years before the statute took effect could be subject to mandatory detention decades later if he is taken into state custody for even the most trivial offense, whether he is convicted or not. Even an illegal arrest would be enough to trigger mandatory detention if any release from custody were enough.[39] In addition, the Government's reading sweeps in the group of criminal aliens most likely to qualify for a bond because only prior criminals who have been released for at least ten years are affected by the interpretation. If the detainee poses a risk of flight or danger to the community, then the Immigration Judge can make such a finding at a hearing and deny bond.

Here, Petitioner was released from the offense rendering him removable almost fifteen years ago, four years before the mandatory detention provision took effect. He does not appear to have been convicted of any crime since his February 1994 release. Though he was arrested for simple assault and criminal threatening in December 2007, those charges were subsequently dropped and do not qualify Petitioner for removal. Because the 2007 "release" from state custody is not related to the 1991 offense rendering Petitioner removable, Petitioner is not subject to mandatory detention.[40]

---

**36.** *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778.

**37.** § 1226(c) (emphasis added).

**38.** *See* Resp't Mem. Supp. Mot. Dismiss 13–14.

**39.** While it is possible that the BIA could eventually decide that an illegal arrest does not trigger mandatory detention, there is no basis for making such a distinction in the text.

**40.** This result is consistent with the decisions of other courts that have reviewed the BIA's interpretation of the mandatory detention provision. *See Thomas v. Hogan,* No. 1:08–CV–0417, 2008 WL 4793739 (M.D.Pa. Oct. 31, 2008); *Cox v. Monica,* No. 1:07–CV–0534,

### III. *Conclusion*

For the foregoing reasons, Respondents' *Motion to Dismiss* is ALLOWED IN PART and DENIED IN PART. The Motion is ALLOWED with respect to Respondent Bruce Chadbourne, but DENIED with respect to Respondent Brian Gillen. The *Petition for Writ of Habeas Corpus* is ALLOWED, in that an Immigration Judge must provide Petitioner with an individualized bond hearing by December 18, 2008.

AN ORDER HAS ISSUED.

### *ORDER*

For the reasons set forth in the accompanying Memorandum, this court hereby orders that:

1. Respondents' *Motion to Dismiss* [# 9] is ALLOWED IN PART and DENIED IN PART.

   a. The Motion is ALLOWED with respect to Respondent Bruce Chadbourne.

   b. The Motion is DENIED with respect to Respondent Brian Gillen.

2. The *Petition for Writ of Habeas Corpus* [# 1] is ALLOWED.

   a. An Immigration Judge shall provide Petitioner with an individualized bond hearing by December 15, 2008.

   b. Parties shall notify this court of the decision of the Immigration Judge by December 18, 2008.

3. Petitioner's *Emergency for Writ and Emergency Motion for Hearing* [# 5] is DENIED AS MOOT.

2007 WL 1804335 (M.D. Pa. June 20, 2007); *Quezada–Bucio v. Ridge,* 317 F.Supp.2d 1221,

4. PAIR Project, Inc.'s *Motion for Leave to File Amicus Brief* [# 12] is DENIED AS MOOT.

IT IS SO ORDERED.