Higinio Alejandro GARCIA, Petitioner,

v.

Christopher SHANAHAN, Field Office Director for the Office of Detention and Removal Operations for U.S. Immigration and Customs Enforcement at 201 Varick Street, New York, NY; Wayne Muller, Assistant Field Office Director for the Office of Detention and Removal Operations; Janet Napolitano, Secretary of Homeland Security; Eric Holder, Attorney General of the United States; and the U.S. Department of Homeland Security, Respondents.

No. 09 Civ. 2995 (CM).

United States District Court, S.D. New York.

May 1, 2009.

Nancy Babette Morawetz, Washington Square Legal Services, Inc., New York, NY, Alina Das, New York, NY, for Petitioner.

## DECISION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS

McMAHON, District Judge:

Petitioner Higinio Alejandro Garcia challenges his confinement while removal proceedings against him are pending. Petitioner contends that the Respondents hold him in mandatory detention, without the opportunity for bail or bond assessment, pursuant to an erroneous interpretation of Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c). Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents to release him from mandatory detention, where he has been held since September 29, 2008, or alternatively, compelling Respondents to grant Petitioner's request for an individualized bond determination hearing.[1]

For the reasons stated herein, the petition for writ of habeas corpus is granted. Respondents are directed to provide Petitioner with an individualized bond determination hearing within 10 days of the date of this decision.

## BACKGROUND

*The Mandatory Detention Provision*

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). IIRIRA contains the mandatory detention provision, Section 236(c) of the INA, which is now codified at 8 U.S.C. § 1226(c). That provision provides as follows:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who—

 (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

 (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

 (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

 (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

 when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to

---

1. In his Amended Petition for Writ of Habeas Corpus, Petitioner also sought to restrain the Respondents from transferring him outside of the jurisdiction of the New York Field Office of the Office of Detention and Removal Operations ("DRO"). The Respondents have advised the Petitioner and the Court that they will not seek to transfer Petitioner from the DRO, so the Court will not address the issue.

whether the alien may be arrested or imprisoned again for the same offense. 8 U.S.C. 1226(c).

If a detainee meets any of the qualifications of Section 1226(c), he is subject to mandatory detention during removal proceedings, so no immigration judge can undertake an individualized determination about whether to grant bail or bond. 8 C.F.R. § 1003.19(h)(2)(i). The petitioner is being held pursuant to Section 1226(c)(1)(B).

Though the IIRIRA was enacted by Congress on September 30, 1996, implementation of the mandatory detention provision was deferred for two years. *See Thomas v. Hogan*, 08 Civ. 0417, 2008 WL 4793739, at *1 (M.D.Pa. Oct. 31, 2008)(detailing history of provision). During those two years something called the "Transition Period Custody Rules" ("TPCR") were in place. *See* IIRIRA § 303(b)(3). These rules provided for individualized bond hearings for certain aliens who were removable for having committed certain crimes; they gave the immigration judge discretion to set bond if the alien did not present a danger to the community and was likely to appear at future removal proceedings. *Id.; See Thomas*, 2008 WL 4793739, at *1.

On October 9, 1998, the TPCR expired and the mandatory detention provision under Section 1226(c) became effective.

*Factual Background*

Petitioner came to the United States from the Dominican Republic in or about July 1986. (Am. Pet. ¶ 13.) He was admitted as a lawful permanent resident, and has lived in this country continuously since his arrival. (*Id.*) The papers submitted in support of the petition indicate that Garcia has the support of a number of family members, who live in the United States as citizens or as lawful permanent residents. Before Garcia was taken into DHS custody, he took care of his teenage daughter, of whom he had full custody. (*See, e.g.,* Am. Pet. Exs. E–J within Ex. C.)

On October 13, 1989—nine years before the mandatory detention provision went into effect—Garcia was convicted, by plea, of attempted criminal sale of a controlled substance in the third degree under N.Y. Penal Law §§ 110, 220.39(1). (Am. Pet. ¶ 14.) Garcia was sentenced to a term of imprisonment of five years probation, with six months incarceration (commonly referred to by New York judges as a "six month split"). (Declaration of Natasha Oeltjen ("Oeltjen Deck") Ex. 1.) He completed his sentence well prior to the passage of the mandatory detention provision.

On March 8, 2008, Mr. Garcia was arrested on unspecified charges that were wholly unrelated to the 1989 arrest. (Am. Pet. Ex. C within Ex. C.) On September 25, 2008, the charges against Garcia were dismissed. (Am. Pet. ¶ 15.)

While he was in pre-trial custody on those charges, however, the Bureau of Immigration and Customs Enforcement ("BICE") and Department of Homeland Security ("DHS") determined that Garcia was not a citizen, and that he had a felony drug conviction from 1989. (*Id.* Ex. D within Ex. C.) On September 29, 2008, four days after his release from Riker's Island, BICE charged Garcia with removability, based on his 1989 drug conviction, and rearrested him on the ground that he was subject to non-reviewable mandatory detention under 8 U.S.C. § 1226(c). He has languished in custody since September 19, 2008. (Oeltjen Decl. Ex. 5; Am. Pet. Ex. A.) Mr. Garcia has been transferred to various detention centers in the United States, including centers in New Mexico and Texas. (*Id.* ¶ 17.) Eventually, his case was transferred back to Immigration Court at 201 Varick Street in New York City, and he was returned to this district,

where he is presently incarcerated. (*Id.* ¶ 11–12.)

On March 27, 2009, Garcia filed the instant petition, challenging his impending transfer to a detention facility outside of the DRO and his classification as an alien subject to mandatory detention. (*Id.* ¶¶ 19–21.) On March 27, 2009, the Hon. Harold Baer signed an Order to Show Cause restraining respondents from removing Petitioner from the jurisdiction of the New York DRO *pendente lite*. (*Id.* ¶ 21.)

On April 2, 2009, Petitioner had a hearing before Immigration Judge Vomacka, at which he challenged his classification as subject to mandatory detention. Judge Vomacka denied bond, on the ground that Garcia was subject to mandatory detention as a matter of law and could not be bailed. (*Id.* ¶ 8.) He performed no individualized assessment of petitioner's bailability.

Respondent has assured the Court that BICE and DHS will keep Garcia in a detention facility under the jurisdiction of the New York DRO office pending a final decision by an Immigration Judge in his removal proceedings.

### DISCUSSION

### I. Jurisdiction to Review this Petition

This Court has subject matter jurisdiction to review Garcia's writ for petition of habeas petition under 28 U.S.C. § 2241(c)(3). While the Immigration and Nationality Act ("INA") precludes review of the "Attorney General's discretionary judgment" with regard to "detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e), the United States Supreme Court rejected the contention that § 1226(e) deprives courts of jurisdiction to consider challenges to the interpretation of the mandatory detention statute. *Demore v. Kim,* 538 U.S. 510, 517, 123 S.Ct. 1708,

155 L.Ed.2d 724 (2003). In *Demore,* the Court held that a challenge to "the statutory framework that permits [petitioner's] detention without bail" is not the same as a challenge to "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Id.* at 516–17, 123 S.Ct. 1708. Therefore, this Court has subject matter jurisdiction over the petition. *See, e.g., Henderson v. I.N.S.,* 157 F.3d 106, 119–22 (2d Cir.1998) (habeas review extends to statutory questions in the context of removal).

A number of other district courts have previously exercised jurisdiction to decide similar questions of statutory interpretation under the IIRIRA's mandatory detention statute. *See, e.g., Oscar v. Gillen,* 595 F.Supp.2d 166 (D.Mass.2009); *Saysana v. Gillen,* No. 08–11749, 2008 WL 5484553 (D.Mass. Dec. 1, 2008); *Thomas v. Hogan,* No. 08–0417, 2008 WL 4793739 (M.D.Pa. Oct. 31, 2008); *Hy v. Gillen,* 588 F.Supp.2d 122 (D.Mass.2008).

### II. Exhaustion of Remedies

Respondents argue that Garcia's petition should be denied because he has failed to exhaust his administrative remedies. (Resp't Opp'n at 5–6.) Respondents concede that there is no statutory requirement of exhaustion where, as here, an alien challenges the mandatory nature of his detention. Respondents nonetheless argue that, "as a prudential matter," the Court should require administrative exhaustion in Garcia's case. (Resp't Opp'n at 6.)

However, where Congress is silent on the issue of exhaustion, it is a matter of the Court's discretion whether a petitioner must exhaust his administrative remedies before applying for relief in federal court. *See, e.g., Hy,* 588 F.Supp.2d. at 125–26; *Pastor–Camarena v. Smith,* 977

F.Supp. 1415, 1417 (W.D.Wash.1997). A court rightly excuses a failure to exhaust administrative remedies when such exhaustion would be futile "or where the agency has predetermined the issue before it." *Hy*, 588 F.Supp.2d at 125–26.

■ On April 2, Immigration Judge Vomacka denied Garcia's challenge to his classification as being subject to mandatory detention under 8 U.S.C. § 1226(c). In doing so, he afforded deference to the Board of Immigration Appeals ("BIA") recent opinion in *Matter of Saysana*, 2008 WL 3978211 (BIA Aug. 27, 2008), which is discussed below. It would be futile for Petitioner to appeal Judge Vomacka's decision because the BIA has already decided that it will interpret 8 U.S.C. § 1226(c) in a manner adverse to his interests. Indeed, the BIA recently held that its reasoning in *Saysana* is binding on immigration judges. *See Matter of Facey*, 2009 WL 638904 (BIA Feb. 23, 2009).

### III. Garcia is not Subject to Mandatory Detention under Section 1226(c)

Like every district court that has considered the question at bar, this Court now concludes that the petitioner is not subject to mandatory detention under Section 1226(c), because he was released from prison for the removable offense well prior to the effective date of the mandatory detention rule.

Garcia's 1989 drug offense is an enumerated offense under the statute. U.S.C. §§ 1227(a)(2)(B)(i) and (iii). However, the IIRIRA did not take effect until October 9, 1998, and the statute, by its terms, applies prospectively, to noncitizens "released" on or after that effective date. *See* Pub.L. 104–208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009–586. When Congress passed IIRIRA, it provided that implementation of the mandatory detention provision contained in 8 U.S.C. § 1226(c)

could be delayed for up to two years at the request of the Attorney General. *See* IIRIRA § 303(b)(2). Congress provided, "After the end of such 1–year or 2–year periods, the provisions of [1226(c)] *shall apply to individuals released after such periods.*" *Id.* (emphasis added). The BIA concluded the same a decade ago. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (BIA 1999) (finding that "the respondent is not subject to mandatory detention under section [1226(c)] of the Act because he was released from his nonservice custodial setting (i.e., from criminal custody) prior to the expiration of the Transition Rules"); *see also In re Victor Rojas*, 23 I. & N. Dec. 117, Interim Decision, (BIA 2001)("We are not, however, applying section 236(c) to aliens who were released from criminal custody prior to the date on which the provision went into effect. We have previously determined that such aliens are beyond the reach of section 236(c)")(*citing Adeniji, supra*).

Respondents do not dispute that Section 1226(c) only applies to aliens released from custody after the October 9, 1998 effective date of the statute.

The question is: "released" from custody for *what*.

■ Respondents contend that that Petitioner can be subject to mandatory detention under Section 1226(c) because he was "released" from custody in September 2008—after the mandatory detention provision became law—even though that detention (on a charges that were later dismissed) had no relation to the 1989 conviction rendering him removable. I disagree.

For over a decade, courts analyzing Section 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody on or about the

time he is released from custody for the offense that renders him removable.[2]

In *Cox v. Monica*, No. 07–534, 2007 WL 1804335 (M.D.Pa. June 20, 2007), petitioner Junior Cox challenged his detention pursuant to Section 1226(c). Cox, a native of Barbados, was taken into BICE custody in February 2007 pursuant to a Notice to Appear (NTA), which charged him with removability based on three previous convictions. *Id.* at *2. Cox had been released from state custody in November 2006, but he was in custody for conduct that did *not* subject him to removal. *Id.* He had last been released (on bail) for a removable offense in January 1998—nine months before the mandatory detention provision went into effect. *Id.* Nevertheless, the immigration judge concluded that Cox was subject to mandatory detention, because he had been "released" from custody in 2006. *Id.* Cox sought habeas relief in the Pennsylvania district court.

Reviewing Cox's petition, the Hon. Christopher Conner of the Middle District of Pennsylvania noted, "Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect" *id.* at *4 (*citing Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 160–61 (3d Cir.1998)), and "conclude[d] that the statutory provision does not retroactively apply to aliens who were released from custody prior to its effective date because the provision clearly attaches new legal consequences to actions taken before its enactment." *Id.* The court further held, "Petitioner's 2006 arrest [and subsequent release from custody] does not alter this conclusion as … *the date of release from the offense for which the individual is found removable* determines whether the individual is entitled to an individualized bond hearing or the mandatory detention provision." *Id.* at *5 (*citing Alikhani*, 70 F.Supp.2d at

2. *See, e.g., Pastor–Camarena*, 977 F.Supp. at 1417 (holding that "The plain meaning of ['when the alien is released'] is that it applies immediately after release from incarceration, not to aliens released many year [sic] earlier"); *Alwaday v. Beebe*, 43 F.Supp.2d 1130, 1133 (D.Or.1999)(finding it is "arbitrary and capricious for respondent to interpret the phrase 'when the alien is released' to include aliens, like petitioner, who were released from incarceration many years before coming into the custody of the INS for deportation proceedings" (internal quotations and alterations omitted)); *Velasquez v. Reno*, 37 F.Supp.2d 663, 671–73 (D.N.J.1999)(holding that the mandatory detention provision is inapplicable to alien who was released from custody for a removable offense thirteen years before the effective date of the statute, but was taken into custody and made subject to removal proceedings after the effective date); *Rivera v. Demore*, 99–3042, 1999 WL 521177, *5 (N.D.Cal. July 13, 1999)(finding that petitioner who was released from criminal custody three years before the statute's effective date is therefore "well beyond section [1226(c)'s] temporal reach"); *Alikhani v. Fa-*

sano, 70 F.Supp.2d 1124, 1132 (S.D.Cal.1999)(holding that an alien was subject to section 1226(c) because his post-October 9, 1998 release from custody was related to the underlying offense that rendered him removable); *Grant v. Zemski*, 54 F.Supp.2d 437, 442 (E.D.Pa.1999)(rejecting argument that Congress intended for the mandatory detention provision to apply regardless of when the individual was released); *Vang v. Ashcroft*, 149 F.Supp.2d 1027, 1034 (N.D.Ill.2001)(finding based on district court opinions, as well as a BIA opinion, that Section 1226(c) is inapplicable to alien released prior to statute's effective date); *Quezada–Bucio v. Ridge*, 317 F.Supp.2d 1221, 1224 (W.D.Wash.2004) (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under Section 1226(c)); *Bromfield v. Clark*, No. 06–757, 2007 WL 527511, at *4–5 (W.D.Wash. Feb. 17, 2007) (declining to give BIA decisions deference and concluding that the "when the alien is released" requires aliens to be detained at the time of release from state custody).

1132; *Grant*, 54 F.Supp.2d at 442; *Velasquez*, 37 F.Supp.2d at 663)(emphasis added). The court concluded that "[B]ICE's attempt to reap the benefits of section [1226(c) ] by applying the mandatory detention provision to aliens such as petitioner is overreaching and inconsistent with the scheme established by Congress." *Id.*

This Court finds Judge Conner's reasoning persuasive. The mandatory detention provision cannot be retroactively applied to aliens who were released from custody for removable offenses prior to October 9, 1998—even if they are later released from custody for a nonremovable offense.

The only difference between *Cox* and the case at bar is that after *Cox* was decided, the BIA handed down *Matter of Saysana*, 24 I. & N. Dec. 602, 2008 WL 3978211 (BIA Aug. 27, 2008), in which it re-interpreted Section 1226(c) to require mandatory detention of deportable aliens who were released from custody for nonremovable offenses after the effective date of the statute.

In *Saysana*, the BIA addressed the question of whether the post-IIRIRA "release" from custody "must be directly tied to the basis for detention under [section 1226(c) ]." *Id.* at 604. In spite of precedent from district courts to the contrary, the BIA answered that question in the negative, and found that a "release" from custody need not relate to the removable offense for mandatory detention to be involved. *Id.* at 608.

Respondents argue that this Court should defer to the BIA's recent interpretation of Section 1226(c) under *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and so deny Petitioner's writ of habeas corpus.

In *Chevron*, the Supreme Court established a two-step framework for courts reviewing an administrative agency's interpretation of a statute. *Id.* Under *Chev-*

*ron*'s first step, the court considers "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If Congress manifested its intent "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of congress." *Id.* at 842–43, 104 S.Ct. 2778. At this first step the court should "try to determine congressional intent using traditional tools of statutory construction," and looking at "the language and the structure of the Act as a whole." *Hy*, 588 F.Supp.2d at 126 (*quoting Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990)).

If the court cannot determine a clear Congressional intent because the statute is "silent or ambiguous with respect to the specific issue," then the court must proceed to *Chevron*'s second step, and determine whether the agency's determination is reasonable, meaning whether it is "based on a permissible construction of the statute," giving substantial deference to the agency. *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

■ The court declines to give the BIA's interpretation of Section 1226(c) deference under *Chevron.*

The Court finds that the plain language of the statute is unambiguous and manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense.

Recently, the Hon. Joseph Tauro of the District of Massachusetts considered a petition with strikingly similar facts to the case at bar. In *Hy v. Gillen*, 588 F.Supp.2d 122 (D.Mass.2008), the petitioner, Duy Tho Hy, challenged his mandatory detention under section 1226(c). *Id.* at 123. In 1991, Hy had pled guilty to two counts of indecent assault and battery of a minor, a removable offense under the statute. *Id.* at 124. In 1994, Hy completed

his sentence and his probation was terminated. *Id.* In 2007, Hy was arrested on unrelated, nonremovable charges. *Id.* Those charges (like the charges against Petitioner) were dismissed. Nonetheless, Hy was taken into BICE after his release from state custody for his 2007 arrest. An immigration judge determined that Hy was subject to mandatory detention under Section 1226(c). *Id.* As in this case, the government argued that the BIA's statutory interpretation of the mandatory detention statute in *Saysana* should be given *Chevron* deference. *Id.* at 126.

At the first *Chevron* step, Judge Tauro held, "Viewing the 'when released' language it light of the section as a whole, it is clear that the 'release' triggering mandatory detention must be related to the underlying qualifying offense." *Id.* at 127. Judge Tauro specifically noted that,

> The "when released" language immediately follows the enumerated offenses, and the clause is further modified by language providing that detention is required whether or not the alien may, among other things, be arrested again "for the same offense." The reference to the "same offense" in the phrase modifying the "when released" language suggests that the whole clause applies to a release from custody for the offense rendering the alien removable. Because the entire section speaks of certain qualifying offenses, it is only natural to read the "when the alien is released" clause to mean "when the alien is released from custody arising from the qualifying offense."

*Id.*

Judge Tauro thus found that the statute was not ambiguous and that Congress' intent was that mandatory detention bar an individualized bail determination only when the alien was released from custody for a deportable offense and thereafter picked up by BICE. *See Id.*

Judge Tauro nonetheless went on to the second *Chevron* step, and held, "Even if the language is ambiguous, the Government's interpretation is unreasonable." *Id.* He noted that under the Government's interpretation "an alien who committed a qualifying offense years before the statute took effect could be subject to mandatory detention decades later if he is taken into state custody for even the most trivial offense, whether he is convicted or not," and that "Even an illegal arrest" could be enough to trigger mandatory detention under the government's reading. *Id.* Judge Tauro further noted that "the Government's reading sweeps in the group of criminal aliens most likely to qualify for a bond because only prior criminals who have been released for at least ten years are affected by the interpretation." *Id.* Judge Tauro concluded that "Because the 2007 'release' from state custody is not related to the 1991 offense rendering Petitioner removable, Petitioner is not subject to mandatory detention." *Id.*

This Court endorses Judge Tauro's reasoning under either of *Chevron*'s steps—though the Court submits that issue can be resolved solely under *Chevron* step one by looking at the plain language of the statute, which indicates that there must be a nexus between the basis for custody from which the noncitizen is released and the qualifying offenses for mandatory detention.

▆▆ In contrast, the BIA's recent interpretation of the Statute is antithetical to traditional canons of statutory construction. "[A] cardinal principle of statutory construction [is] that a statute should, upon the whole, be construed so that, if possible, no clause, sentence or word is rendered superfluous, void or insignificant." *TRW v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). A reading interpreting that "when the alien

is released" to apply to any offense renders a later reference to the "same offense" meaningless. The word "offense" is used three times to specify who shall be taken into custody. *See* 8 U.S.C. § 1226(c)(1)(A)-(C). The reference to being arrested or imprisoned again for the "same offense" can only be logically understood to mean the offenses defined earlier in the statute, "The normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). The BIA's reading makes the "same offense" language superfluous or gives it a meaning different from the meaning of "offense" earlier in the statute.

All district courts that have considered whether an alien must be mandatorily detained pursuant to Section 1226(c) after *Saysana*—including the district court considering Saysana's own habeas petition—have also rejected the BIA's interpretation of the statutory language. *See Thomas v. Hogan*, No. 08-0417, 2008 WL 4793739, at *3-4 (M.D.Pa. Oct. 31, 2008); *Saysana v. Gillen*, No. 08-11749, 2008 WL 5484553, at *1 (D.Mass. Dec. 1, 2008); *Hy*, 588 F.Supp.2d at 126; *Oscar v. Gillen*, 595 F.Supp.2d 166, 170 (D.Mass.2009).

The Court also notes that *Saysana* appears to represent a change in position for the BIA. In an internal memorandum, dated July 12, 1999, the Immigration and Naturalization Service ("INS"), DHS's predecessor, announced that the "when ... released" language in section 1226(c) refers to (1) a criminal sentence of incarceration, (2) for one of the offenses enumerated in § 1226(c). The memo stated: "[T]he Office of Immigration Litigation has recommended a reinterpretation of the statute ... The reinterpretation will now only mandate detention of those criminal aliens listed in [1226(c)] who completed

their criminal sentences on or after October 9, 1998." The memo specified that "release" must occur on or after October 9, 1998 from a criminal sentence *"based on a removable offense,* regardless of the date of such conviction...." (Michael A. Pearson, Executive Associate Commissioner for Field Operations Headquarters, *Field Guidelines for Applying Revised Interpretation of Mandatory Custody Provisions,* July 12, 1999 ("DHS Internal Memo"), at 1(emphasis added).)

 "[W]hether an agency's position will be accorded such controlling significance and, if not, how much weight should be given to its view, will depend on the circumstances of the individual case." *U.S. v. Ten Cartons, Ener–B Nasal Gel,* 888 F.Supp. 381, 412 (E.D.N.Y.1995) (*citing Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 417, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993)) Although inconsistency in itself is not enough to render *Chevron* deference inappropriate—especially if the statute is ambiguous, *see Rust v. Sullivan,* 500 U.S. 173, 186, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)—"an agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation may be entitled to considerably less deference than a consistently held agency view." *Ten Cartons,* 888 F.Supp. at 413 (*quoting I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). The Second Circuit has previously noted that, "The expertise in statutory interpretation to which we normally defer becomes dubious when the expert cannot make up its own mind." *N.Y. City Health and Hosps. Corp. v. Perales,* 954 F.2d 854, 861–62 (2d Cir.1992).

Additionally, courts have consistently refused to afford any sort of deference to an agency's *"post hoc* litigation posture." *Lewis v. Grinker* 965 F.2d 1206, 1220 (2d Cir.1992) (*citing Bowen v. Georgetown*

*Univ. Hosp.*, 488 U.S. 204, 212–13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).

The Court can hardly ignore the procedural landscape in which the BIA changed its interpretation. It was only after district courts had overwhelmingly rejected the government's position, in case after case interpreting the statutory language of the mandatory detention provision, that the BIA addressed this issue in a precedent decision, and changed its own interpretation of the statute so that the "release" from custody was detached from the removable offense. The Court's holding is informed by the recency of this shift in policy.

The April 28, 2009 announcement of the Supreme Court's decision in *FCC v. Fox Television Stations, Inc.*, 556 U.S. ——, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) does not compel me to change this conclusion. In that case, Justice Scalia, opining for the majority, held that the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, (the "APA"), did not require a court to subject agency action that represents a change in policy to a more searching than usual review. Justice Scalia's holding is not at odds with the Court's reasoning in this case.

The APA is concerned with the judicial review of agency rules. It defines the purview of "judicial authority to review executive agency action for procedural correctness." *Id.* (*citing Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519, 545–49, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)). The statute sets forth the scope of review, stating, "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," 5 U.S.C. § 706, setting aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

Here, no challenge has been made to the BIA's interpretation of Section 1226(c) under the APA. Even if such a challenge had been made, this case involves a question of statutory interpretation—as opposed to a question of whether an agency's action complied with requisite procedural standards—a task as to which the courts are equally, if not more, adept than the BIA. Moreover, in *Saysana*, the BIA did not address its previous interpretation of Section 1226(c), as outlined in the internal memorandum, dated July 12, 1999. Thus, cannot be said that the "agency's path [to the action taken] may reasonably be discerned" as required to uphold an agency determination under the APA. *See Fox Television*, 556 U.S. at ——, 129 S.Ct. 1800 (*citing Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

In addition, the 1999 DHS internal memorandum indicates that DHS states that policy change outlined in the memorandum was occasioned by the fact that "federal courts have consistently rejected" its previous interpretation. (DHS Internal Memo at 1.) Here, again the BIA's position appears to be shifting in response to contrary district court precedent. The Supreme Court has previously noted that an agency rule made in response to an adverse court ruling "may support a claim that the INS' issuance of the regulation was arbitrary and capricious within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 706." *Reno v. Flores*, 507 U.S. 292, 332–333 & n. 21, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

Therefore, because the instant case is one calling only for statutory interpretation, and because the Court's ruling that the BIA's interpretation was not entitled

to *Chevron* deference the Court does not find that the *Fox Television* decision to affect the outcome in this case.

\* \* \*

In light of the plain language of the statute itself, the solid line of cases supporting Petitioner's interpretation of the mandatory detention statute and the evidence of the conflicting statutory interpretations by the BIA itself, the Court declines to give deference to the BIA's statutory reading.

Petitioner has also raised equal protection and due processes challenges to his detention under Section 1226(c). However, it is not necessary to reach the constitutional issues because the statutory construction issue is decisive. *Aguilar v. Lewis,* 50 F.Supp.2d 539, 544 (E.D.Va. 1999) (*citing Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664(1985)).

### *CONCLUSION*

For the foregoing reasons, the petition for writ of habeas corpus will be granted and Respondents are directed that an Immigration Judge must provide Petitioner with an individualized bond hearing within 10 days of the date of this Memorandum and Order. An appropriate order follows.

### *ORDER*

For the reasons set forth in the accompanying memorandum, the Court hereby orders that:

1. The Amended Petition for Writ of Habeas Corpus (Dkt. # 3) is granted;

2. An Immigration Judge shall provide Petitioner with an individualized bond hearing within 10 days of the date of this Order;

3. The parties shall notify this Court of the decision of the Immigration Judge within three days after the

Immigration Judge's decision has issued.

It is so ordered.