**Jean LOUISAIRE, Petitioner,**

v.

**Wayne MULLER, Assistant Field Office Director, Office of Detention and Removal for U.S. Immigration and Customs Enforcement; Ruben Perez, Assistant Field Office Director, Office of Detention and Removal for U.S. Immigration and Customs Enforcement; Christopher Shanahan, New York Field Office Director for the Office of Detention and Removal for U.S. Immigration and Customs Enforcement; Janet Napolitano, Secretary of Homeland Security; Eric Holder, Attorney General of the United States; and the U.S. Department of Homeland Security, Respondents.**

No. 10–cv–07503 (CM).

United States District Court, S.D. New York.

Dec. 1, 2010.

---

Nancy Babette Morawetz, New York, NY, for Petitioner.

Natasha Oeltjen, United States Attorney's Office, New York, NY, for Respondents.

## DECISION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS

McMAHON, District Judge.

Petitioner Jean Louisaire challenges his confinement while removal proceedings against him are pending. Petitioner contends that the Respondents hold him in mandatory detention, without the opportunity for bail or bond assessment, pursuant to an erroneous interpretation of Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c). Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents to release him from mandatory detention,

where he has been held since October 1, 2010, or alternatively, compelling Respondents to grant Petitioner's request for an individualized bond determination hearing.

For the reasons stated herein, the petition for writ of habeas corpus is granted. Respondents are directed to provide Petitioner with an individualized bond determination hearing within 10 days of the date of this decision.

## BACKGROUND

Louisaire, a citizen of Haiti and a lawful permanent resident of the United States since 1977, has been undergoing removal proceedings since December 5, 2006, based on a charge that he is removable under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien convicted of a controlled substance offense. *See* Petition ("Pet"), Exh. B (Notice to Appear). This charge was based on a 2004 conviction for Criminal Possession of a Controlled Substance in the Seventh Degree (cocaine), under N.Y.P.L. § 220.03. *See* Declaration of Natasha Oeltjen ("Oeltjen Decl."), Exh. 1 (Disposition of Arrest).[1]

### Louisaire's Removal Proceedings

Louisaire conceded that he was removable as charged, but applied for discretionary relief in the form of cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a). *See id.,* Exh. 3 (Decision of the IJ), at 1–2. ICE argued that he was not eligible for such relief, because he was an aggravated felon, *see* 8 U.S.C. §§ 1101(a)(43)(B) (defining certain drug offenses as aggravated felonies), 1229b(a)(3)

---

**1.** As of 2006, Louisaire's criminal record also included: (1) a November 1989 conviction for vehicle theft, for which he was sentenced to 60 days' imprisonment and one year of probation; (2) a January 1991 conviction for possession of marijuana, for which he was fined $325; (3) an April 2001 conviction for intent to fraudulently obtain transit without pay(i.e.,

fare beating), for which he was sentenced to time served; and (4) a May 2001 conviction for attempted petit larceny, for which he was sentenced to one year of probation—which he violated, and was resentenced to 30 days' imprisonment. Oeltjen Decl., Exh. 2 (FBI RAP Sheet).

(making aggravated felons ineligible for cancellation)—in that his cocaine conviction was his second drug offense, and was thus punishable as a felony under federal law. *See id.* at 6–9. Upon rejecting this argument, the IJ considered whether Louisaire merited relief as a matter of discretion. *Id.* at 10–15. After weighing the equities Louisaire's long residence and close family ties in the United States, and the potential hardship of returning to Haiti—against the negative factors—his extended criminal record, illegal drug use, lack of steady employment, failure to pay taxes, and lack of evidence of rehabilitation, *id.* at 15–21—the IJ decided to give Louisaire "one final chance to try to avoid removal from the United States." *Id.* at 21–22.

ICE appealed the IJ's decision to the BIA, challenging the IJ's ruling with respect to eligibility only, and on February 28, 2008, the BIA sustained the appeal and ordered Louisaire removed to Haiti. Pet., Exh. D (Decision of the BIA).

Louisaire filed an untimely petition for review of his removal order in the Second Circuit, which ultimately was dismissed, in January 2010. *See* Oeltjen Decl., Exh. 4 (Order). Subsequently, following the Second Circuit's decision in *Alsol v. Mukasey,* 548 F.3d 207 (2d Cir.2008), which held that a second simple drug possession conviction does not constitute a drug trafficking "aggravated felony" under the INA, ICE joined Louisaire in a motion to reopen. *Id.,* Exh. F. On December 18, 2009, the BIA granted the motion and remanded the case to the IJ "for the purpose of allowing [ICE] to complete or update identity, law enforcement, or security investigations or examinations, and further proceedings, if necessary." *Id.*

### Louisaire's Detention History

Meanwhile, Louisaire was in immigration custody for a substantial portion of his

removal proceedings. ICE began detaining him on December 5, 2006, after locating him in Riker's Island and initiating proceedings, *see* Oeltjen Decl., Exh. 5 (Record of Deportable/Inadmissible Alien), ruling that he was subject to mandatory detention on account of his controlled substance conviction. *Id.,* Exh. 6 (Notice of Custody Determination). Louisaire remained in ICE detention throughout his proceedings before the IJ, and ICE's appeal to the BIA, until he was granted a conditional release on January 30, 2008. *See id.,* Exh. 7 (Order of Release on Recognizance). The release notification specified that his release was subject to certain conditions, including that he "not violate any local, State, or Federal laws or ordinances," and warned: "Failure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by [ICE]." *Id.*

On July 7, 2008, Louisaire was arrested in Mineola, New York, and on September 24, 2008, he pleaded guilty to criminal mischief in the fourth degree under N.Y.P.L. § 145.00; he was sentenced to 90 days' imprisonment, and had an order of protection entered against him. *See* Oeltjen Decl., Exh. 2. Upon his release, he was again taken into ICE custody. *See id.* He remained in ICE detention—at this point, governed by INA § 241 (authorizing the detention of aliens ordered removed), given the BIA's February 2008 removal order—until December 7, 2009. *See id.,* Exh. 8 (Release Notification); Exh. 9 (Order of Supervision). ICE, having determined that Louisaire's removal was not foreseeable at that time, released him from post-order detention under an Order of Supervision. *See id.* This order was subject to a number of conditions, including that Louisaire "not commit any crimes," and warned him that "[a]ny violation of

these conditions may result in [his] being taken into ICE custody." *Id.*, Exh. 9.

On March 15, 2010, Louisaire was again arrested in Mineola, New York, and on July 6, 2010, he was convicted of Criminal Contempt in the First Degree, under N.Y.P.L. § 215.51(d).[2] *See id.*, Exh. 10 (Certificate of Disposition). He was sentenced to ten months' imprisonment, and an eight-year order of protection was issued against him. *Id.*

**Events Culminating in the Instant Habeas Petition**

Around September 27, 2010, Louisaire's current counsel learned that ICE had issued a detainer, and that a transfer from criminal custody to ICE custody was imminent. *See* Pet., Exh. A (Fax to Richard McClancy). After further informal discussions with ICE revealed that Louisaire would likely be subject to mandatory detention, *see id.*, Louisaire proceeded to file this action on October 1, 2010—at some point during his transfer from the Nassau County Jail in East Meadow, New York, to ICE's Varick Street Processing Facility in New York City, and subsequently to ICE's contract facility at the Hudson County Jail in Kearny, New Jersey. Oeltjen Decl., ¶ 3.

Louisaire argues that he is not subject to INA § 236(c) because "his most recent convictions are not grounds of removability and thus do not provide a statutory basis for taking him into ICE custody." Pet. ¶¶ 40, 43. He further argues that the statute does not apply because he has "already spent a cumulative total of over two years in immigration detention and continuing to detain him beyond that period is unconstitutional," *id.* ¶ 36, and because his case is now on remand following an initial round of IJ and BIA proceedings, *id.* ¶ 37.

Finally, he argues that his detention is unconstitutional because it "does not serve any of the purposes for which Congress granted Respondents the authority to detain individuals awaiting removal," in that he does not now have a final order and might yet be granted relief, *id.* ¶ 38, and because ICE "cannot remove him to Haiti in the reasonably foreseeable future" given its suspension of removals to Haiti since the January 2010 earthquake, *id.* ¶ 43. He also challenges the constitutionality of available procedures for challenging his detention. *See* Mem. at 21–23

**Subsequent Developments**

Later on October 1, 2010, ICE formally determined that Louisaire was subject to mandatory detention. On October 7, 2010, Louisaire filed a motion to challenge that finding and IJ Steven Abrams held a hearing on that motion on October 14, 2010. *See* Mem. at 9. As Louisaire had submitted substantial briefing, IJ Abrams did not issue an immediate decision, but rather, requested that ICE file a responsive brief, and indicated that he would issue a written decision on the legal issue shortly thereafter. Oeltjen Decl. ¶ 5. He also set November 30, 2010 as a "control date," by which he would hold another hearing if he had not yet ruled. *Id.* ICE filed its brief on October 20, 2010, arguing that INA § 236(c) applied, and in the alterative, that bond should be denied as a matter of discretion. *See id.*, Exh. 11 (ICE Brief). ICE also noted that it intended to lodge a new charge of removability under INA § 237(a)(2)(E) (covering violations of protective orders), on account of Louisaire's recent conviction. *Id.* at 4.

---

2. A person is guilty of this offense when, "in violation of a duly served order of protection, or such order of which the defendant has actual knowledge ... intentionally or recklessly damages the property of a person for whose protection such order was issued in an amount exceeding two hundred fifty dollars." N.Y.P.L. § 215.51(d).

On November 18, 2010, IJ Vomacka conducted a hearing regarding the merits of Louisaire's removal case. The next merits hearing is scheduled for January 26, 2011, and there is no indication from the parties that the removal proceedings will be concluded on that date, or anytime soon thereafter. In the meantime, Louisaire remains detained and the Government adheres to its position that "ICE properly invoked its mandatory-detention authority under INA § 236(c) in this case." Oeltjen letter dated November 23, 2011.

## DISCUSSION

### Jurisdiction to Review this Petition

■ This Court has subject matter jurisdiction to review Louisaire's writ for petition of habeas petition under 28 U.S.C. § 2241(c)(3). While the Immigration and Nationality Act ("INA") precludes review of the "Attorney General's discretionary judgment" with regard to "detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e), the United States Supreme Court rejected the contention that § 1226(e) deprives courts of jurisdiction to consider challenges to the interpretation of the mandatory detention statute. *Demore v. Kim*, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). In *Demore*, the Court held that a challenge to "the statutory framework that permits [petitioner's] detention without bail" is not the same as a challenge to "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Id.* at 516–17, 123 S.Ct. 1708. Therefore, this Court has subject matter jurisdiction over the petition. *See, e.g., Henderson v. I.N.S.*, 157 F.3d 106, 119–22 (2d Cir.1998) (habeas review extends to statutory questions in the context of removal).

A number of other district courts have previously exercised jurisdiction to decide similar questions of statutory interpretation under the IIRIRA's mandatory detention statute. *See, e.g. Oscar v. Gillen*, 595 F.Supp.2d 166 (D.Mass.2009); *Saysana v. Gillen*, No. 08–11749, 2008 WL 5484553 (D.Mass. Dec. 1, 2008); *Thomas v. Hogan*, No. 08–0417, 2008 WL 4793739 (M.D.Pa. Oct. 31, 2008); *Hy v. Gillen*, 588 F.Supp.2d 122 (D.Mass.2008).

### No Exhaustion of Administrative Remedies is Required in This Case

■ Administrative exhaustion is not statutorily required in detention cases, but can still be required as a matter of judicial discretion, as it serves the purposes of "protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir.2003); *see also Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995). Indeed, Respondents concede that statutory exhaustion is inapplicable to this case, but argue that Petitioner must nonetheless wait until the conclusion of agency proceedings before seeking habeas review. *See* Resp. Opp. at 13–15.

■ "A court rightly excuses a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it." *Garcia v. Shanahan*, 615 F.Supp.2d 175, 180 (S.D.N.Y.2009) (internal citations omitted); *see also McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In this case, the BIA has determined that Mr. Louisaire's 2004 conviction for simple drug possession requires mandatory detention during removal proceedings *at any time* after his release from his incarceration for that offense. 23 I. & N. Dec. 117, 127 (B.I.A. 2001). Indeed, Respondents have previ-

ously detained Petitioner for over one year under § 1226(c)(1) on *the exact same basis* that Respondents claim applies now. *See* Resp. Opp. at 5. No new facts have arisen that would lead to a different result at this juncture. Since the outcome of Petitioner's bond eligibility proceedings is a foregone conclusion, the Court will not require administrative exhaustion. *See Monestime v. Reilly,* 704 F.Supp.2d 453, 456–57 (S.D.N.Y.2010); *Garcia,* 615 F.Supp.2d at 179–80; *see also Flores–Powell v. Chadbourne,* 677 F.Supp.2d 455, 463–64 (D.Mass.2010); *Hy v. Gillen,* 588 F.Supp.2d 122, 125 (D.Mass.2008).

### The Mandatory–Detention Statute, INA § 236(c)

ICE has authority to detain any alien pending a decision in removal proceedings, and has discretion to release some aliens. INA § 236(a), 8 U.S.C. § 1226(a). Aliens who have been convicted of certain enumerated offenses, however, including drug crimes, *see id.* §§ 1226(c)(1)(B), 1227(a)(2)(B), are subject to mandatory detention under INA § 236(c), which provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who—
>
> . . .
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released, without regard to whether the

alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1). The Attorney General has discretion to release such aliens from detention only in limited circumstances, not applicable here, upon a determination that release is necessary to protect a witness in a criminal matter. *Id.* § 1226(c)(2).

Congress enacted this provision pursuant to section 303(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Pub.L. No. 104–208, § 303(b), 110 Stat. 3009–586 (Sept. 30, 1996), in response to evidence that the INS (now ICE) was unable to remove the majority of criminal aliens, in large part because of their failure to appear for removal hearings, and that such aliens displayed a high rate of recidivism. *See Demore v. Kim,* 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress deferred the rule's implementation for two years, directing that the new INA § 236(c) provisions "shall apply to individuals released after such periods." IIRIRA § 303(b)(2).

### Louisaire is Not Subject to Mandatory Detention Under INA § 236(c).

■ Respondent's asserted basis for detaining Louisaire without an opportunity for bond has been his February 2004 seventh degree misdemeanor drug possession conviction for which Mr. Louisaire received a three day sentence.[3] *See* Order

---

**3.** The First, Second, Third, and Sixth Circuits have held (in cases applying the INA) that a second simple-possession offense cannot be treated as a recidivist felony under the Controlled Substances Act unless the offense was prosecuted as a recidivist offense under state law. *See Berhe v. Gonzales,* 464 F.3d 74, 85–86 (1st Cir.2006); *Steele v. Blackman,* 236 F.3d 130, 137–38 (3d Cir.2001); *Rashid v. Mukasey,* 531 F.3d 438, 442–48 (6th Cir. 2008). By contrast, the Fifth and Seventh Circuits have held (in cases applying the Sentencing Guidelines) that a second simple-possession offense can be treated as a recidivist felony, since the conduct underlying the second possession could have been prosecuted as

to Show Cause ("Order") ¶ 2, Exh. A (Certificate of Disposition). However, Mr. Louisaire was placed in removal proceedings and in mandatory detention more than two years later. *See id.* Respondents rely on the BIA's position in *Matter of Rojas* that there is "no connection in the [Immigration and Nationality] Act between the timing of an alien's release from criminal incarceration, the assumption of custody over the alien by the Service, and the applicability of any of the criminal charges of removability." 23 I. & N. Dec. at 122.

■ *Matter of Rojas,* however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses,* even if they are still serving part of their sentence out in the community, under "parole, supervised release, or probation." *See Garcia v. Shanahan,* 615 F.Supp.2d 175, 182 (S.D.N.Y. 2009) (holding that "the plain language of the statute . . . manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense"); *see also Saysana v. Gillen,* 590 F.3d 7, 10 (1st Cir.2009) ("if the reference to 'when the alien is released' is read to encompass any release from any non-DHS custodial setting . . . that phrase is completely disjointed from the text that precedes and follows it").

A majority of courts that have examined this issue have held that the mandatory statute is unambiguous on this point. *See, e.g., Monestime,* 704 F.Supp.2d at 458 (citing *Garcia,* 615 F.Supp.2d at 180–81); *Burns v. Cicchi,* 702 F.Supp.2d 281, 288 (D.N.J.2010) (holding that "Congress clearly intended to limit the "when released" language to those offenses and grounds for inadmissibility set forth in section 1226(a)(1)(C)"); *Scarlett v. DHS,* 632 F.Supp.2d 214, 219 (W.D.N.Y.2009) (agreeing with the district courts that have held "the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); *Waffi v. Loiselle,* 527 F.Supp.2d 480, 488 (E.D.Va.2007) (holding that "the mandatory detention statute . . . does not apply to an alien . . . who has been taken into immigration custody well over a month after his release from state custody" for an offense enumerated within 236(c)); *Bracamontes v. Desanti,* 2010 WL 2942760, at *5 (E.D.Va. June 16, 2010) (collecting cases).

Section 1226(c)(1) cannot currently apply to Mr. Louisaire because his latest conviction for criminal contempt under New York Penal Law § 215.51(d) does not trigger any of the enumerated grounds in the mandatory detention statute, and thus his latest release from criminal custody is not a qualifying release under the statute. In particular, this conviction does not constitute a crime involving moral turpitude ("CIMT").[4] *See* § 1226(c)(1)(B)-(C) (au-

a recidivist felony under the CSA. *See United States v. Cepeda–Rios,* 530 F.3d 333, 334–36 (5th Cir.2008) (per curiam); *United States v. Pacheco–Diaz,* 506 F.3d 545, 548–50 (7th Cir. 2007). Thus, it is not clear that petitioner's 2004 second-simple possession conviction can form the predicate for his removal. However, the Court need not concern itself with that question in this case, it need only decide

whether there is a temporal requirement to INA § 236(c) and, if so, whether it was complied with here.

4.  In addition to the contempt conviction discussed herein, Mr. Louisaire also has a 2008 conviction for criminal mischief in the fourth degree in violation of N.Y. Pen. Law § 145.00. *See* Order ¶ 10. This offense does not consti-

thorizing mandatory detention where there is CIMT for which a person has been sentenced to a year of imprisonment, or if there are two CIMTs). New York Penal Law § 215.51(d) punishes an individual who "intentionally or recklessly damages the property of a person ... in an amount exceeding two hundred fifty dollars" in violation of an order of protection. Since the statute encompasses reckless conduct and requires only a minimal level of damage to property, it cannot be considered a CIMT under BIA precedent.

■ In the context of property crimes, property damage is generally not considered a CIMT where the offense does not require an evil intent and a high degree of damage. *See, e.g., Rodriguez–Herrera v. INS*, 52 F.3d 238, 240 (9th Cir.1995) (holding that malicious mischief statute proscribing knowing and malicious damage to property is not CIMT because it is a "relatively minor offense" and "one can be convicted of malicious mischief for destroying as little as $250.00 of another's property with an evil wish to annoy"); *Matter of N*, 8 I. & N. Dec. 466, 468 (BIA 1959) (malicious mischief statute proscribing destruction of property is not categorically CIMT); *Matter of C*, 2 I. & N. Dec. 716 (INS Central Office 1946, BIA 1947) (holding that statute proscribing willful destruction or damage of property is not CIMT); *Matter of M.*, 21 I. & N. Dec. 469, 470–71 (B.I.A.1946) (observing that "sweeping and general" property damage statute should

not be deemed CIMT); *cf. Matter of G.*, 4 I. & N. Dec. 409 (BIA 1951) (holding that attempt to wreck train involved moral turpitude).

Moreover, BIA precedent teaches that the lower the level of *mens rea* a statute penalizes, the higher the degree of resulting harm must be. *Matter of Solon*, 24 I. & N. Dec. 239, 242 (BIA 2007) ("[A]s the level of conscious behavior decreases ... from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude."). When considering statutes that merely punish reckless conduct, the BIA has noted that a low level of intent must be accompanied by a serious result in order to be deemed a CIMT. *See Matter of Fualaau*, 21 I. & N. Dec. 475, 478 (BIA 1996). The Ninth Circuit has observed that property damage in such a small amount ($250) is so minor that even if the statute requires a relatively high level of *mens rea*, it cannot constitute a CIMT. *See Rodriguez–Herrera*, 52 F.3d at 240 (holding that malicious mischief statute proscribing knowing and malicious damage to property is not CIMT since $250 of damage was a "little" amount). Using a similar analysis, the BIA has held that a statute with a relatively low level of *mens rea* and similarly low level of property damage cannot be a CIMT, since "the offense cannot be regarded as inherently base, vile or depraved." *Matter of C*, 2 I. & N. Dec. at 719 (deciding that statute prohibiting

---

tute a CIMT. N.Y.P.L. § 145.00 cannot categorically be deemed a CIMT for two distinct reasons. First, the statute of conviction does not require an evil or malicious motive. *In re Herndon–Melendez*, A28 668 187, 2006 WL 3088969, at *1 (BIA Sept. 11, 2006) (holding that criminal mischief statute that proscribes intentional or knowing damage to property is not CIMT because statute lacks evil intent and "is comparable with those types of offenses that we have consistently found not to involve moral turpitude"). The criminal mischief

statute at issue in *Herndon–Melendez* proscribes intentional or knowing damage to property, *id.*, and N.Y.P.L. § 145.00 similarly punishes both intentional and reckless damage to property without accompanying evil or malicious intent. Second, minimal damage or harm is sufficient for conviction under the statute. *See People v. Hills*, 95 N.Y.S.2d 947, 722 N.Y.S.2d 460, 745 N.E.2d 379, 380 (2000) (holding that "extent of damage necessary to sustain a conviction for fourth degree criminal mischief is slight").

238

grossly negligent destruction or damage of property in small amount is not CIMT). In Mr. Louisaire's case, the plea transcript shows that he pled to reckless damage of a cell phone. *See* Order ¶ 5, Exh. B (Plea Transcript). Thus, this offense is not a CIMT under well-established precedent.

Because Mr. Louisaire's conviction under New York Penal Law § 215.51(d) does not constitute a CIMT, Respondents' assertion of detention authority pursuant to 8 U.S.C. § 1226(c)(1) following Mr. Louisaire's release from custody is in violation of the INA. A contrary interpretation of § 1226(c)(1) would distort the plain meaning of the statute. For example, the statute authorizes mandatory detention "without regard to whether the alien may be arrested or imprisoned again for the *same offense.*" (emphasis added). The use of the term "same offense" shows that the individual must be apprehended and denied an opportunity for bond only upon his or her "release" from custody related to an offense enumerated in § 1226(c)(1)(A)-(D). A contrary reading would render "same offense" mere surplusage. *See Garcia,* 615 F.Supp.2d at 184 ("The reference to being arrested or imprisoned again for the 'same offense' can only be logically understood to mean the offenses defined earlier in the statute."); *see also United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (describing a court's "duty to give effect, if possible, to every clause and word of a statute") (international citations omitted).

Even if it were ambiguous, the BIA's interpretation of the statute in *Matter of Rojas* is unreasonable. *See Chevron v. NRDC,* 467 U.S. 837, 845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Reading § 1226(c)(1) as authorizing mandatory detention upon *any* release from criminal custody, regardless of that release's connection to the enumerated offenses, would produce absurd results. *Hy,* 588

F.Supp.2d at 127 ("Even an illegal arrest would be enough to trigger mandatory detention if any release from custody were enough.") As this Court explained in *Garcia,* "the BIA's recent interpretation of the Statute is antithetical to traditional canons of statutory construction." 615 F.Supp.2d at 183.

**Due Process Claims**

Petitioner has also raised due processes challenges to his detention under Section 1226(c). However, it is not necessary to reach the constitutional issues because the statutory construction issue is decisive. *Aguilar v. Lewis,* 50 F.Supp.2d 539, 544 (E.D.Va.1999) (*citing Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664(1985)).

### *CONCLUSION*

For the foregoing reasons, the petition for writ of habeas corpus will be granted and Respondents are directed that an Immigration Judge must provide Petitioner with an individualized bond hearing within 10 days of the date of this Memorandum and Order. An appropriate order follows.